UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

– – – – – – – – – – – – – – – – x

UNITED STATES OF AMERICA            3:14CR00194(AWT)

vs.

GARRETT SANTILLO

                                    HARTFORD, CONNECTICUT
                Defendant           MARCH 13, 2015

– – – – – – – – – – – – – – – – x

**CHANGE OF PLEA**

     BEFORE:

          HON. ALVIN W. THOMPSON, U.S.D.J.

APPEARANCES:

     FOR THE GOVERNMENT:

          OFFICE OF THE UNITED STATES ATTORNEY
          157 Church Street, 23rd Floor
          New Haven, Connecticut 06510
          BY:  TRACY L. DAYTON, AUSA

     FOR THE DEFENDANT:

          OFFICE OF THE FEDERAL PUBLIC DEFENDER
          265 Church Street, Suite 702
          New Haven, Connecticut 06510
          BY:  PAUL F. THOMAS,  ASST. FEDERAL DEFENDER

                              Corinna F. Thompson, RPR
                              Official Court Reporter

1                          **10:09 AM**

2              THE COURT:  Good morning.  Please be seated

3      everyone.

4              We're here in the matter of United States of

5      America versus Garrett Santillo.  The docket number is

6      3:14CR194.

7              Would counsel please state their appearances

8      and identify anyone at counsel table with you.

9              MS. DAYTON:  Yes.  Good morning, Your Honor.

10     Tracy Dayton for the government and I'm here with Matt

11     Parker from the U.S. Marshals.

12             THE COURT:  Thank you.

13             MR. THOMAS:  Good morning, Your Honor.  Paul

14     Thomas.  I'm here with Mr. Santillo who's now rising to

15     my side.

16             THE COURT:  Thank you.

17             Ms. Dayton, I understand that the purpose of

18     today's proceeding is to accept a change of plea; is

19     that correct?

20             MS. DAYTON:  Yes, Your Honor.

21             THE COURT:  Thank you.

22             Mr. Santillo, at this time I'm going to review

23     your rights with you because I want to be certain that

24     you understand them.

25             THE DEFENDANT:  Okay, Your Honor.

1          THE COURT:  Okay.  You have a right to remain

2     silent, that is, you are not required to make any

3     statement.  If you do make a statement, that statement

4     can and probably will be used against you.

5          Do you understand that, sir?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  If at any time you have already

8     made a statement you need not continue, that is, if you

9     start to make a statement you may stop at any time.

10          Do you understand that, sir?

11          THE DEFENDANT:  I understand, Your Honor.

12          THE COURT:  You have a right to counsel, that

13     is, you have a right to be represented by an attorney at

14     every stage of the proceedings against you.  You are

15     currently represented by Attorney Thomas, but at some

16     point in the future you are not and you cannot afford

17     counsel, one will be appointed for you by the Court at

18     no cost to you.

19          Do you understand that, sir?

20          THE DEFENDANT:  Yes, I do, Your Honor.

21          THE COURT:  Thank you.

22          Ms. Dayton, what is the nature of the charge

23     against Mr. Santillo and the maximum sentence to which

24     he could be exposed if convicted.

25          MS. DAYTON:  Your Honor, the charge to which

1    Mr. Santillo will be pleading is a violation of Title 18

2    United States Code Section 876(c), which is mailing

3    threatening communications, Your Honor.  The possible

4    maximum term of imprisonment is 10 years and a $250,000

5    fine, Your Honor.  The Court also may impose a term of

6    supervised release of up to three years.  Any violation

7    thereof could result in another term of imprisonment of

8    up to two years, Your Honor.  And this does fall under

9    the alternate fine provision as well, Your Honor.

10   However, there's no indication there's any loss to the

11   victims charged in the indictment.

12                THE COURT:  Thank you.

13                Mr. Santillo, before accepting a guilty plea

14   from you there are a number of questions I must ask you

15   while you are under oath to assure that it is a valid

16   plea.  I may at times cover a point more than once, but

17   if I do, that will be because it is very important that

18   you understand everything that is happening here today.

19   If you do not understand any of my questions, please do

20   not hesitate to say so and I will repeat the question or

21   ask that you speak with your attorney.

22                Do you understand that, sir?

23                THE DEFENDANT:  I understand, Your Honor.

24                THE COURT:  Would you please stand so the

25   Clerk can administer the oath.

1          THE CLERK:  Would you please raise your right

2     hand.

3          You do solemnly swear any response you make to

4     the Court's inquiry of you shall be the truth, the whole

5     truth and nothing but the truth, so help you God?

6          THE DEFENDANT:  I do, yes.

7          THE CLERK:  Thank you.

8          THE COURT:  Please be seated, sir.

9          Mr. Santillo, do you understand that now that

10    you've taken this oath your answers to my questions will

11    be subject to the penalties for perjury or for making a

12    false statement if you do not answer truthfully?

13         THE DEFENDANT:  I understand that, yes.

14         THE COURT:  Would you please state your full

15    name, sir.

16         THE DEFENDANT:  Garrett Drew Santillo.

17         THE COURT:  And have you ever used any other

18    names, sir?

19         THE DEFENDANT:  No.

20         THE COURT:  And could you tell us how old you

21    are, sir.

22         THE DEFENDANT:  Thirty-five.

23         THE COURT:  And could you tell us how much

24    formal education you have.

25         THE DEFENDANT:  I've he had less than a

1    semester of college.  That's as far as I've gone.

2          THE COURT:  At this time I have some questions

3    that go to competency, and I might just ask counsel to

4    suggest what the most efficient way to get through this

5    is going to be.  I routinely ask whether the defendant

6    is under the care of a physician or psychiatrist and

7    whether he's taken any narcotic drugs, medicine or pills

8    or consumed any alcoholic beverages.

9          MR. THOMAS:  I'll put that on the record, Your

10   Honor, Mr. Santillo's current status in that regard.  He

11   has been under treatment at Connecticut Valley Hospital

12   since he was released from custody on conditions of

13   release that required and limited his release to

14   Connecticut Valley Hospital.  He's been there since

15   November 25th of 2014.  He is receiving care and

16   treatment there from a team of mental health providers.

17   He is not on any medication at this time.

18         THE COURT:  My understanding from earlier

19   conference and report was that he's not there because

20   he's not competent.

21         MR. THOMAS:  Correct.  Exactly.

22         THE COURT:  And I have received reports from

23   the Probation Office with and we've had status

24   conferences with Mr. Topor, along with others, present.

25         MR. THOMAS:  I will say, and I know Your Honor

1    will ask, I have no questions about Mr. Santillo's

2    competence to participate in these proceedings, his

3    understanding of his rights, his intelligence.

4              THE COURT:  And Mr. Santillo, I'll confirm

5    with you that in the past 48 hours you've not taken any

6    narcotic drugs, medicine or pills?

7              THE DEFENDANT:  That's correct.

8              THE COURT:  On consumed any alcoholic

9    beverages?

10             THE DEFENDANT:  That's correct.  I haven't.

11             THE COURT:  Have you ever been hospitalized or

12   treated for alcoholism or narcotics addiction at any

13   time?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Is your mind clear today, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And do you understand everything

18   that's going on here?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Mr. Thomas, I think you've

21   expressed that you have not had any difficulty in

22   communicating with the defendant, correct?

23             MR. THOMAS:  That's correct Your Honor.

24             THE COURT:  And have you discussed this case

25   with your client?

1              MR. THOMAS:  Yes, I have.

2              THE COURT:  Do you believe he understands the

3      rights he will be waiving?

4              MR. THOMAS:  Yes.

5              THE COURT:  I think you've already covered

6      that you believe he's capable of understanding the

7      nature of these proceedings?

8              MR. THOMAS:  That's correct.

9              THE COURT:  And you have no doubt as to his

10     competence to plead at this time?

11             MR. THOMAS:  No, I do not.

12             THE COURT:  Have you advised your client of

13     the maximum sentence and fine that can be imposed and

14     have you discussed with him the operation of the

15     Sentencing Guidelines and the role they play in the

16     sentencing process?

17             MR. THOMAS:  Yes, I have.

18             THE COURT:  Thank you.

19             Mr. Santillo, have you had an opportunity to

20     discuss your case with your attorney and are you

21     satisfied to have him represent you?

22             THE DEFENDANT:  Yes.  Yes, I am at this time.

23             THE COURT:  Have you received -- I'm sorry?

24             THE DEFENDANT:  I said I am at this time.

25             THE COURT:  When you say "at this time," why

1    do you say that?

2              THE DEFENDANT:  I mean so far I'm satisfied.

3              THE COURT:  You're not stating as to things in

4    the future because you can't speak to that.

5              THE DEFENDANT:  Correct.  That's what I meant.

6              THE COURT:  That's perfectly very precise.

7    Thank you.

8              THE DEFENDANT:  Okay.

9              THE COURT:  Have you received a copy of the

10   indictment, sir?

11             THE DEFENDANT:  Yes, I have.

12             THE COURT:  And have you consulted with your

13   attorney about the charges in the indictment?

14             THE DEFENDANT:  Yes, I have, Your Honor.

15             THE COURT:  Do you understand the charges in

16   the indictment, sir?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  At this time then, Mr. Santillo, I

19   want to talk with you about some things that you must

20   understand about entering a plea of guilty.

21             THE DEFENDANT:  Okay.

22             THE COURT:  And the first and most important

23   thing that you must understand is that you do not have

24   to plead guilty, even if you are guilty.  Under our

25   system of law, the prosecutor has the burden of proving

1    the guilt of a defendant beyond a reasonable doubt, and

2    if the prosecutor is unable to meet this burden the jury

3    has the duty to find the defendant not guilty, even if

4    he is guilty.

5              Do you understand that, sir?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Now, it has sometimes happened

8    that a jury returns a verdict of not guilty, even though

9    everyone else in the courtroom thinks the defendant is

10   guilty.  What the jury is saying in those cases is not

11   necessarily that the defendant is innocent, but rather,

12   that the prosecutor has failed to meet his or her burden

13   of proving that the defendant is guilty.

14             Do you understand the difference, sir?

15             THE DEFENDANT:  Yes.  Now I do, yes.

16             THE COURT:  You sure?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  I want to make it very

19   clear to you that even if you are guilty you have a

20   choice:  You may plead guilty, as you apparently now

21   wish to do, or you may say to the government, "prove

22   your case; meet your burden of proving my guilt beyond a

23   reasonable doubt," and the way you exercise that option

24   is by saying "not guilty" when the Court asks you how

25   you plead.

1              Do you understand that, sir?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Now, if you plead not guilty,

4       under the Constitution and laws of the United States you

5       are entitled to a speedy, public trial by a jury with

6       the assistance of counsel on the charges contained in

7       the indictment.

8              Do you understand that, sir?

9              THE DEFENDANT:  Yes.

10             THE COURT:  At a trial you would be presumed

11      innocent and the government would have to overcome that

12      presumption and prove you guilty beyond a reasonable

13      doubt by evidence that the Court determines is

14      admissible.  You would not have to prove that you were

15      innocent.

16             If the government were to fail, the jury would

17      have the duty to find you not guilty.

18             Do you understand that, sir?

19             THE DEFENDANT:  Yes, I do.

20             THE COURT:  In the course of a trial the

21      witnesses for the government would have to come to court

22      and testify in your presence and your counsel would have

23      the right to cross-examine the witnesses for the

24      government, to object to evidence offered by the

25      government and to offer evidence in your defense.

1          Do you understand all of that, sir?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Now, at a trial, while you would

4    have the right to testify if you chose to do so, you

5    could not be required to testify.  Under the

6    Constitution, a defendant in a criminal case cannot be

7    forced to take the witness stand at his trial and say

8    anything that could be used to show that he is guilty of

9    the crimes charged.  If you decided not to testify, the

10   Court would instruct the members of the jury that they

11   could not hold that against you.

12          And whether you testify or not, you have the

13   right to compel witnesses to come to court to testify in

14   your defense.

15          Do you understand all of that, sir?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  Now, if, on the other hand, you

18   decide to plead guilty, I will have to ask you questions

19   about what you did so I can be certain that you are

20   guilty of the charge to which you seek to plead guilty

21   and you will have to answer my questions and acknowledge

22   your guilt.  As a result, you would be giving up the

23   rights that I have just described, in particular, the

24   right not to say anything that would show that you are

25   guilty of the crimes with which you are charged.

1           Do you understand that, sir?

2           THE DEFENDANT:  Yes.

3           THE COURT:  If you plead guilty and I accept

4  your plea, you will be giving up your constitutional

5  right to a trial and the other rights I have just

6  discussed.  There will be no trial of any kind and no

7  right to appeal the conviction.  The Court will simply

8  enter a finding of guilty on the basis of your guilty

9  plea.

10          Do you understand that, sir?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  If your plea is accepted you will

13  be adjudged guilty of a felony offense and the result

14  may be to deprive you of certain rights, such as the

15  right to vote, the right to hold public office and the

16  right to serve on a jury.

17          Do you understand that, sir?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Do you also understand that your

20  conviction will deprive you of the right to possess any

21  kind of firearm?

22          THE DEFENDANT:  I understand.

23          THE COURT:  Mr. Santillo, do you understand

24  that as a consequence of your conviction, the Bureau of

25  Prisons or the United States Probation Office will

1   collect a DNA sample from you for analysis and indexing?

2           THE DEFENDANT:  I understand.

3           THE COURT:  Now, your plea today may work to

4   your disadvantage if, in the future, you are found

5   guilty of another crime because you could receive a

6   longer sentence at that time based on your conviction of

7   the crime you intend to plead guilty to today.

8           Do you understand how that would work, sir?

9           THE DEFENDANT:  I understand what you're

10  saying.  I do understand what you're saying.

11          THE COURT:  Okay.  Thank you.

12          Mr. Santillo, are you willing to give up your

13  right to a trial and the other rights I have just

14  discussed?

15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  Ms. Dayton, is there a written

17  plea agreement?

18          MS. DAYTON:  Yes, there is, Your Honor.

19          THE COURT:  Have the defendant and his counsel

20  seen it?

21          MS. DAYTON:  Yes, they have, Your Honor.

22          THE COURT:  And Mr. Thomas, is the defendant

23  ready to execute the plea agreement?

24          MR. THOMAS:  I believe he is, Your Honor.

25          THE DEFENDANT:  I am.

1          THE COURT:  Okay.

2          MR. THOMAS:  Your Honor, Mr. Santillo and I

3    have now signed the agreement and the attached

4    Stipulation of Offense Conduct that previously had been

5    signed by Assistant U.S. Attorney Dayton.

6          Shall I hand it up to the Court?

7          THE COURT:  Please do.

8          (Plea agreement presented to Court.)

9          THE COURT:  Mr. Santillo, have you read this

10   agreement, sir?

11         THE DEFENDANT:  Several times, yes.

12         THE COURT:  And have you discussed it your

13   attorney?

14         THE DEFENDANT:  I have and he's answered my

15   questions about it.

16         THE COURT:  So do you feel you understand the

17   agreement?

18         THE DEFENDANT:  Yes.

19         THE COURT:  I'm just going to ask you a couple

20   of questions.

21         THE DEFENDANT:  Okay.

22         THE COURT:  I think it's about the fourth page

23   in, there's a section about waiving the right to appeal.

24         THE DEFENDANT:  Yeah, I see it, Your Honor.

25         THE COURT:  Do you understand that a defendant

1    ordinarily can appeal or collaterally attack his

2    sentence?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And do you understand that if the

5    sentence in your case does not exceed 37 months'

6    imprisonment, a three-year term of supervised release, a

7    $100 special assessment and a $50,000 fine and any

8    restitution determined by the Court, you are giving up

9    your right to appeal or collaterally attack your

10   sentence?

11             THE DEFENDANT:  I understand.

12             THE COURT:  And towards the end of your

13   agreement is the second place where you signed,

14   something called a Stipulation of Offense Conduct.  It's

15   about three pages from the back.

16             THE DEFENDANT:  Okay.  I see it now.

17             THE COURT:  Have you read that stipulation

18   carefully, sir?

19             THE DEFENDANT:  Yes, I have, Your Honor.

20             THE COURT:  And do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And have you discussed that with

23   your attorney?

24             THE DEFENDANT:  Yes, I have, Your Honor.

25             THE COURT:  At this time then, Mr. Santillo,

1    I'm going to ask the prosecutor to outline the terms of

2    the plea agreement.

3              THE DEFENDANT:  Okay.

4              THE COURT:  When Ms. Dayton is finished I'll

5    have a couple of questions for you.

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Ms. Dayton.

8              MS. DAYTON:  Thank you, Your Honor.

9              The defendant has agreed to plead guilty to

10   Count 2 of the indictment, Your Honor.  As I mentioned

11   earlier it charges him with mailing threatening

12   communications in violation of 18 U.S.C. Section 876(c).

13             The defendant was charged initially in a

14   nine-count indictment.  So as part of the plea agreement

15   the government has agreed at the time of sentencing that

16   it will move to dismiss the remaining eight counts of

17   the indictment against the defendant.

18             There is no forfeiture in this case, Your

19   Honor, and as of this time, as I told the Court, there

20   have been no claims of restitution made.  I don't

21   actually believe that there will be, but it is a victim

22   case.  And I should put on the record that pursuant to

23   18 U.S.C. 3771, all of the victims have been kept

24   apprized of the proceedings in this case and invited to

25   attend all public hearings.

1          The government and the defense have reached a

2     Guideline stipulation, Your Honor.  We've agreed that

3     the base offense level is 12.  Two points were added

4     because the relevance offense conduct involved more than

5     two threats.  Another six points are added because the

6     victim was an official victim, in that it was a United

7     States District Court judge.  And three points are

8     reduced for acceptance of responsibility resulting in an

9     overall Guideline of 17, Your Honor.

10          Based on an initial assessment of defendant's

11     criminal history, both parties believe that

12     Mr. Santillo's Criminal History Category III, which

13     would result in a sentencing range of 30 to 37 months, a

14     fine range of $5,000 to $50,000, and a term of

15     supervised release of up to three years, Your Honor.

16          We've already discussed the defendant's right

17     to appeal.

18          After the defendant's plea in this case, this

19     will end his criminal liability in connection with all

20     of the criminal activity alleged in the indictment, as

21     well as several other letters that were located at the

22     time of the defendant's arrest, Your Honor, that

23     contained similar types of threats.

24          THE COURT:  Thank you.

25          Mr. Santillo, does the agreement as outlined

1    by the assistant United States Attorney fully and

2    accurately reflect your understanding of the agreement

3    that you have entered into with the government?

4              THE DEFENDANT:  Yes, it does.

5              MR. THOMAS:  I would like to put one thing on

6    the record, Your Honor.

7              THE COURT:  Certainly.

8              MR. THOMAS:  The agreement does not contain,

9    which is material to the resolution, is it does not

10   contain, although there's a stipulation of the Guideline

11   range, there's no waiver, if you will, of our right to

12   seek a non-Guideline sentence or a departure from that

13   range.

14             THE COURT:  Thank you.

15             Mr. Santillo, other than the promises

16   contained in the written agreement, has anyone made any

17   promises that are causing to plead guilty or any

18   promises that are causing you to waive your right to

19   appeal or collaterally attack your sentence?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Has anyone made any threats

22   against you or is anyone in any way forcing or otherwise

23   coercing you to plead guilty or to waive your right to

24   appeal or collaterally attack your sentence?

25             THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Thank you.

2          Ms. Dayton, would you like to have the plea

3   agreement filed or returned to you?

4          MS. DAYTON:  Whatever is better for you.

5          THE COURT:  Then we'll go ahead and file it.

6          MS. DAYTON:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          Mr. Santillo, I now want to review with you

9   the maximum sentence that could be imposed in your case.

10          Do you understand that if you plead guilty you

11   could receive a sentence of imprisonment for as long as

12   10 years?

13          THE DEFENDANT:  I understand that.

14          THE COURT:  And do you also understand that

15   you face a supervised release term of as much as three

16   years, and if you violate any condition of supervised

17   release the Court then could sentence you to additional

18   time in prison of up to two years?

19          THE DEFENDANT:  I read that.  I understand it

20   now, yes.

21          THE COURT:  Do you understand that you may be

22   assessed a fine in the amount of up to $250,000?

23          THE DEFENDANT:  I understand that.

24          THE COURT:  And do you understand that I must

25   impose a mandatory special assessment of $100?

1          THE DEFENDANT:  I understand that.

2          THE COURT:  At this time then, Mr. Santillo,

3     I'm going to give you a little background about how the

4     sentencing process works.

5          THE DEFENDANT:  Okay.  I mean, yes, Your

6     Honor.

7          THE COURT:  "Okay" is fine.

8          THE DEFENDANT:  All right.

9          THE COURT:  In imposing a sentence in the

10    federal courts, judges are required to consider a list

11    of factors that is set forth in a law known as

12    Section 3553(a) of Title 18 of the United States Code.

13    Those factors include the Sentencing Guidelines.  The

14    sentencing judge is required to consider the Sentencing

15    Guidelines in determining the particular sentence to be

16    imposed, but the Guidelines are advisory, that is, they

17    suggest or recommend that a certain sentence may be

18    appropriate, but the Court not required to impose that

19    sentence.

20          Thus, the judge must consider the sentencing

21    range calculated using the Sentencing Guidelines in

22    determining the sentence to impose upon you, but the

23    judge must consider that Guidelines sentencing range

24    together with all the other factors in Section 3553(a).

25          Do you understand that, sir?

1          THE DEFENDANT:  I understand what you said.  I

2     don't know the whole section, but I understand what you

3     said.

4          THE COURT:  I'm sure Mr. Thomas will be going

5     over that with you in depth.

6          THE DEFENDANT:  Okay.

7          THE COURT:  Also, in performing the Guidelines

8     calculation, the sentencing judge must:

9          First, determine the sentencing range that

10     would typically result from the combination of your

11     particular offense and your criminal history.

12          And second, determine whether there are facts

13     about your case that would lead the Court to conclude

14     that a higher range or a lower range is the appropriate

15     recommendation under the Sentencing Guidelines.

16          Do you understand that, sir?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  I want to emphasize that until the

19     time of sentencing, when the Court has received a

20     Presentence Report about you and has heard from you and

21     from your attorney and from the government, you cannot

22     know with certainty what the recommended sentencing

23     range calculated using the Sentencing Guidelines will

24     be, or know how much weight the Court will put on which

25     particular factors under the statute, including the

1    Sentencing Guidelines.

2              Do you understand that, sir?

3              THE DEFENDANT:  Yes, I do, Your Honor.

4              THE COURT:  Do you also understand that if I

5    do not accept any recommendation in your plea agreement

6    related to the Sentencing Guidelines you will still be

7    bound by your plea, that is, you will not have any right

8    to withdraw your plea?

9              THE DEFENDANT:  I understand that.

10             THE COURT:  Mr. Santillo, have you reviewed

11   with your attorney how the Sentencing Guidelines relate

12   to your case?

13             Take a minute and talk with Mr. Thomas.

14                  (Pause.)

15             THE DEFENDANT:  Yes.  Yes, we did.

16             THE COURT:  And has your attorney explained to

17   you how your sentence may be determined?

18             THE DEFENDANT:  Yes, we did, Your Honor.

19             THE COURT:  Do you understand that I am not

20   bound by any explanation or recommendation made by your

21   attorney or by the government?

22             THE DEFENDANT:  Yes, I understand.

23             THE COURT:  Thank you.

24             Mr. Thomas, I'll confirm with you that you

25   have discussed with your client how the Sentencing

1    Guidelines relate to his case and explained to him how

2    his sentence may be determined.

3                MR. THOMAS:  Yes, I have, Your Honor.

4                THE COURT:  And also, that I am not bound by

5    your estimate or explanation or the terms of the plea

6    agreement or any recommendation from the government?

7                MR. THOMAS:  Correct.

8                THE COURT:  Thank you.

9                Mr. Santillo, I note that you are indicating

10   that you wish to plead guilty to one count of mailing

11   threatening communications.  You have the right to have

12   that charge in the indictment read to you.  You may,

13   however, choose not to have the charge read to you.  In

14   other words, you may waive a reading of the charge.

15               Mr. Thomas, have you discussed with your

16   client whether he wishes to waive?

17               MR. THOMAS:  I have not.  May I have a moment

18   to do so?

19               THE COURT:  Certainly.

20                   (Off the record.)

21               THE DEFENDANT:  I'm going to waive my right on

22   that, Your Honor.

23               THE COURT:  Thank you, sir.

24               At this time then I'm going to explain to you

25   the elements of the offense to which you intend to plead

1      guilty.  And by "elements of the offense" I mean those

2      facts that the government would have to prove beyond a

3      reasonable doubt before you could be convicted were you

4      to decide not to plead guilty and you instead proceeded

5      to trial.  I want you to bear in mind that the

6      government would have to prove each of those facts by

7      persuading a jury of 12 persons that those facts were

8      true beyond a reasonable doubt.

9              Do you understand that, sir?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  To prove that you are guilty of

12     mailing threatening communications, the government would

13     have to prove beyond a reasonable doubt:

14             First, that you deposited in a post office or

15     authorized depository for mail a letter to be delivered

16     by the United States Postal Service.

17             Second, that you caused the letter to be

18     delivered by the United States Postal Service to a

19     United States district judge by writing the judge's name

20     and address on the front of the envelope.

21             Third, that the letter contained a threat to

22     injure the person of the addressee or another individual

23     or individuals.

24             And fourth, that you acted knowingly and

25     intentionally.

1          Do you have any questions as to these elements

2     of the offense, sir?

3          THE DEFENDANT:  No, I don't.  Before the end

4     of the hearing today I have a brief comment that I think

5     is relevant to today, but I'll leave it up to you.

6          THE COURT:  I'll ask that you talk to Mr.

7     Thomas before making any comment just to make sure you

8     understand any implications.

9          THE DEFENDANT:  Okay.

10         THE COURT:  Do you want to discuss that now,

11    Mr. Thomas?

12         MR. THOMAS:  Perhaps I better.

13              (Off the record.)

14         MR. THOMAS:  Thank you, Your Honor.

15         THE COURT:  So Mr. Santillo, we're now going

16    to turn to your conduct that brings us here today.

17         At this time I would like you to stand, sir.

18         Is the defendant going to be using a petition,

19    Mr. Thomas?

20         MR. THOMAS:  No, Your Honor.  He'll be

21    addressing the court.

22         THE COURT:  Mr. Santillo, would you please

23    tell me in your own words what you did that shows that

24    you are in fact guilty of the charge to which you are

25    now offering to plead guilty?

1          THE DEFENDANT:  I mailed a letter to a Judge

2     Chatigny that wasn't meant to be taken literally.  I

3     didn't have really good anger management skills at the

4     time.  I'm better off now in the treatment that I have.

5     But I realize now, looking back, that what I did was

6     wrong.

7               (Pause.)

8          THE DEFENDANT:  And that now I realize the

9     letter contained a threat that emotionally disturbed the

10    recipient or scared him.

11               (Off the record.)

12        MS. DAYTON:  We need one more minute.  Sorry.

13        THE COURT:  Take your time.

14               (Off the record.)

15      MS. DAYTON:  Maybe I can, with Your Honor's

16    indulgence --

17          MR. THOMAS:  May I have one more moment?

18          THE COURT:  Certainly.

19               (Off the record.)

20      MS. DAYTON:  Your Honor, perhaps I can put the

21    standard out and maybe in terms of this case --

22          THE DEFENDANT:  Okay.

23      MS. DAYTON:  There is a case on this, U.S. v

24    Turner, Your Honor.  It was considered by the Second

25    Circuit I'd say a year and a half, two years ago and it

1    had to do with mail threats and against Judge Posner and

2    Easterbrook in the Seventh Circuit.  And essentially,

3    the standard is that at the time that Mr. Santillo wrote

4    these letters, and then sent them of course because he

5    didn't change them before he sent them, he had to

6    understand, to know and to intend that a reasonable

7    person receiving these letters would feel threatened by

8    the threats contained in the letters.  Whether or not

9    the victim actually felt threatened by the letters is

10   not the relevant standard.

11            Here, for instance, sending a letter to the

12   judge's home address saying if you don't do X, I'm going

13   to kill you, and if you try to change your name or hide,

14   we'll still find you and kill you.  Mr. Santillo had to

15   understand that someone receiving that letter,

16   especially at their home address, would feel threatened

17   by that.

18            And so he had to intend that, not just intend

19   to mail the letter.

20            And the reason the government --

21            THE COURT:  He had to intend that as opposed

22   to understand that or both?

23            MS. DAYTON:  He had to intend for it to be a

24   threatening letter.

25            THE COURT:  And understand.

1          MS. DAYTON:  And understand.

2          THE COURT:  Okay.

3          MS. DAYTON:  And the evidence on this

4    particular issue is based on many things, including the

5    fact that defendant has prior convictions for the same

6    activities.  Also, when arrested, the defendant made a

7    Mirandized statement which started with him lying and

8    denying knowledge saying he didn't send the letters.

9          THE DEFENDANT:  I thought the FBI was going to

10   assault me.  That's what I thought.

11         THE COURT:  Are you summarizing the

12   government's evidence now?

13         MS. DAYTON:  I won't do everything on this

14   front, so maybe Mr. Santillo understands where we're

15   going with this.

16         THE DEFENDANT:  I felt threatened by the FBI.

17         MS. DAYTON:  He admitted in his tape-recorded

18   interview that he knew that these were threatening

19   statements.  And the reason he didn't put his home

20   address or any return address on the envelope was

21   obviously so people would not know where the threats

22   were coming from.

23         THE DEFENDANT:  That wasn't the reason.

24         MS. DAYTON:  I think that this is -- this is

25   an element and I think it's very difficult to overlook

1    the intentional threat part of this.

2            THE COURT:  Okay.  Mr. Thomas, go ahead.

3                (Off the record.)

4            THE DEFENDANT:  All right.  I know what to say

5    now.

6            Your Honor, at the time of the letters I

7    understood that it was perceived as a threat, but

8    without the coping skills that I now have I wasn't able

9    to stop myself.  So to answer, yes, I did know that it

10   could be perceived as a threat.

11           THE COURT:  And you intended it to be a

12   threatening letter --

13           THE DEFENDANT:  I did.

14           THE COURT:  -- but you were not able to stop

15   yourself.

16           THE DEFENDANT:  Correct.

17           THE COURT:  All right.  Thank you, sir.

18           THE DEFENDANT:  You're welcome.

19           THE COURT:  You said a few moments ago that

20   there's something you wanted to say before you left

21   today.

22           THE DEFENDANT:  Yes.

23           THE COURT:  Has that been covered yet?

24           THE DEFENDANT:  No.  Actually it's different

25   from what Mr. Thomas said.  I know what I'm going to

1    say.

2            THE COURT:  Have you talked with Mr. Thomas

3    about that?

4            MR. THOMAS:  I think it's okay for him to say

5    it now.

6            THE COURT:  Okay.

7            THE DEFENDANT:  Yeah.  The reason I lied on

8    the tape is I honestly thought that I didn't tell what

9    the FBI wanted to hear, that the FBI was going to hurt

10   me.  That's what I thought.  Or they were going to have

11   me assaulted by COs and stuff like I was assaulted back

12   at Buttner.  That's what I thought.

13           MS. DAYTON:  Your Honor, I'm going to, A, if

14   we could seal that part of the record because those are

15   some pretty nasty allegations to begin with.  I don't

16   think they are truthful, and I don't think there needs

17   to be a public record of the defendant making

18   allegations regarding threats by the agents who are

19   sitting in court and the inspector.

20           THE DEFENDANT:  I said it that way.

21           MR. THOMAS:  Your Honor, I think it's a matter

22   of perception.

23           THE DEFENDANT:  I perceived it that way.

24           MR. THOMAS:  I don't think it needs to be

25   sealed.  I think it's understood that this is how

1    Mr. Santillo felt.

2              THE COURT:  That's how I'm taking it.

3              THE DEFENDANT:  Thank you, Your Honor.

4              THE COURT:  Mr. Santillo, at this time I'm

5    going to ask the prosecutor to summarize what you did

6    that makes you guilty of the charge to which you intend

7    to plead guilty.

8              THE DEFENDANT:  Okay.

9              THE COURT:  And to also summarize the

10   government's evidence as to that charge.

11             THE DEFENDANT:  Okay.

12             THE COURT:  Please listen carefully because

13   when Ms. Dayton is finished I will ask you whether you

14   agree with her summary of what you did and whether

15   there's anything that you disagree with.

16             THE DEFENDANT:  Okay, Your Honor.

17             THE COURT:  Ms. Dayton.

18             MS. DAYTON:  Thank you, Your Honor.

19             With respect to the count to which the

20   defendant is pleading guilty, at some point between

21   July 11, 2014 and July 15th of 2014, the defendant wrote

22   a letter to Judge Chatigny.  He addressed the letter to

23   Judge Chatigny and placed a stamp on the envelope and

24   put it either in the post office or in a mailbox.  The

25   letter was then delivered by the United States Postal

1    Service to Judge Chatigny's home.  And in the letter

2    there was a threat to kill Judge Chatigny.

3              The government's evidence would consist of

4    many things, Your Honor.

5              Number one, there were several letters sent

6    between July 11th and August 19, 2014, all of which

7    were drafted in the same handwriting and all of which

8    contained the same types of threats that went to seven

9    different victims.  These are the charged victims.  We

10   believe all of these would be relevant to even the

11   charge to which he's pleading guilty based upon the

12   handwriting and the context of the threats.

13             The government would also be putting on

14   information regarding dozens of other letters that were

15   seized from the defendant's home at the time of his

16   arrest that contained similar threats that were

17   addressed to numerous other individuals and were also in

18   envelopes addressed and ready to go just had not yet

19   been stamped and sent.

20             The government would intend to call a

21   handwriting expert, Your Honor, to testify regarding the

22   similarities in the handwriting.  We would be putting

23   the defendant's statement on as evidence of this.  We

24   would also seek to put in 404(b) evidence, Your Honor,

25   regarding the defendant's prior convictions for

1    threatening.

2              THE COURT:  Thank you.

3              Mr. Santillo, do you agree with the

4    prosecutor's summary of what you did, sir?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Is there anything she said with

7    which you disagree?

8              If you want to confer with Mr. Thomas you can

9    do that.

10                   (Off the record.)

11             MR. THOMAS:  Your Honor, Mr. Santillo does not

12   disagree with the core evidence regarding the count to

13   which he's pleading guilty.

14             THE DEFENDANT:  I didn't plan to send the

15   other letters found in my apartment.  I want to say

16   that.

17             MR. THOMAS:  Since we are not going to draw

18   the admissibility of all that other evidence, because it

19   hasn't been determined, it may or may not have been

20   introduced.  But apart from that, the core evidence

21   regarding the letters sent to Judge Chatigny is not

22   disputed.

23             THE COURT:  Thank you.

24             Mr. Santillo, it's now time for you to enter

25   your plea.

1          Would you please stand, sir.

2          THE DEFENDANT:  Sure.

3          THE COURT:  Again, I will have the charge read

4     to you unless you waive a reading of the charge.

5          Do you waive a reading of the charge, sir?

6          THE DEFENDANT:  I do waive that, yes.

7          THE COURT:  Madam Clerk, would you please put

8     the defendant to plea.

9          THE CLERK:  Yes, Your Honor.

10         In the case of United States of America versus

11    Garrett Santillo, Criminal Number 3:14CR194(AWT), as to

12    Count 2 of the indictment charging you with violation of

13    Title 18 United States Code Section 876(c), what is your

14    plea, sir?

15         THE DEFENDANT:  Guilty.

16         THE CLERK:  Your Honor, the defendant pleads

17    guilty to Count 2 of the indictment.

18         THE COURT:  Thank you.

19         Please be seated, sir.

20         On the basis of the Stipulation of Offense

21    Conduct attached to the plea agreement, the answers

22    given by the defendant under oath on the record and in

23    the presence of his counsel to the questions of the

24    Court, the remarks of defense counsel and the remarks of

25    the assistant United States Attorney, I hereby find that

1   the defendant is competent to plead, that he knows his

2   right to a trial and that he knows what the maximum

3   possible sentence is and that there will be a

4   recommended sentencing range determined pursuant to the

5   Sentencing Guidelines.

6           I find also that there is a factual basis for

7   the defendant's plea and that he is entering this plea

8   voluntarily, knowingly and of his own free will.

9           Accordingly, a finding of guilty shall enter

10  forthwith as to Count 2 of the indictment and this case

11  is referred to the United States Probation Office for a

12  presentence investigation.

13          Mr. Santillo, a United States Probation

14  Officer will contact you and arrange to prepare a

15  Presentence Report about you.

16          THE DEFENDANT:  Okay.

17          THE COURT:  And this report will be submitted

18  to the Court to assist it in determining the appropriate

19  sentence in your case.  You should be aware that the

20  probation officers work for the court, they do not work

21  for the prosecution.

22          Also, it is a good idea to consult with your

23  attorney before you are interviewed about what types of

24  information are included in a Presentence Report so you

25  can be prepared during that interview because the

1      Presentence Report is very important in the process of

2      determining your sentence.

3                  Do you understand that, sir?

4                  THE DEFENDANT:  I do understand that, Your

5      Honor.

6                  THE COURT:  Mr. Thomas, I'll ask you to

7      remember that within three days you should contact the

8      probation officer who will be doing the Presentence

9      Report to schedule the presentence interview.

10                 MR. THOMAS:  I will do that.

11                 THE COURT:  And is there an application for

12     continued release pending sentencing?

13                 MR. THOMAS:  There is, Your Honor.

14     Mr. Santillo was released in November.  He was detained

15     initially, arrested in Florida, detained, brought up in

16     custody and eventually released on special conditions,

17     fairly unique, I think perhaps unprecedented, where he

18     was released out on bond with a very strict condition

19     that he go into inpatient residential treatment in at

20     Connecticut Valley Hospital in Middletown in a locked

21     unit.

22                 We recently applied to the Court for a slight

23     modification to allow him to go out, under supervision,

24     for one-on-one psychotherapy.  I believe the Court has a

25     report from U.S. Probation Officer Topor summarizing the

1    course of that treatment briefly.  But in essence,

2    Mr. Santillo has been in compliance with the terms of

3    release.  I recently attended an extraordinary case

4    management meeting at Connecticut Valley Hospital with

5    over a dozen providers and professionals from the state

6    who were there to focus on the treatment that

7    Mr. Santillo has been receiving and what additional

8    treatment could be provided while he was there.  That is

9    being done.  Another case management meeting is expected

10   in early April.

11          I would ask the Court to continue his release

12   on the same conditions.  It may be that at that next

13   meeting a recommendation will be made for a discharge

14   plan.  Should that come to pass, I would anticipate

15   filing an application with the Court consistent with

16   that pending sentencing, depending what that

17   recommendation is and when it's made.

18          If that is true and if Mr. Santillo was

19   permitted to go back to Connecticut Valley Hospital

20   right now, which I think is in his interest

21   psychologically, and also collectively in all our

22   interests that he get the treatment he need, would I

23   make that application to Your Honor or back to

24   Magistrate Smith who originally released him on

25   conditions?

1        THE COURT:  Let me think about that.

2        MR. THOMAS:  If that came to pass it would

3  probably be sometime in early or mid April.  Until then,

4  I would ask that he be released unless and until there's

5  a further order of the Court that he be released on the

6  same conditions.

7        THE COURT:  Anything from the government?

8        MS. DAYTON:  No, Your Honor.  We agree.

9        MR. THOMAS:  One further note in that respect.

10       THE COURT:  Yes.

11       MR. THOMAS:  I have to express a great respect

12  and appreciation for the people who are associated with

13  Connecticut Valley Hospital who have taken on

14  Mr. Santillo as a patient and who transported him here

15  today for the hearing and are prepared to take him back.

16       THE COURT:  Thank you.  The application is

17  granted.

18       THE DEFENDANT:  Thank you, Your Honor.

19       THE COURT:  I think we've agreed that a

20  sentencing date of May 27th at 3:00 p.m --

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  -- is appropriate.

23       I think to get to that date we have to have a

24  shorter timeframe than we ordinarily have.  I assume the

25  defendant waives the right to have the Presentence

1    Report 42 days prior to sentencing.

2            MR. THOMAS:  Yes.  He would like to accelerate

3    the sentencing process.

4            THE COURT:  I believe everyone has looked at a

5    draft of the order that I would enter in terms of

6    deadlines?

7            MS. DAYTON:  Yes, Your Honor.

8            MR. THOMAS:  Yes, Your Honor.

9            THE COURT:  So I will go ahead and sign that.

10           So sentencing is scheduled for May 27th at

11   2015 at 3:00 p.m. here in the south courtroom and I will

12   issue that order later today.

13           Mr. Santillo, do you understand that a failure

14   to appear for sentencing may subject you to additional

15   penalties for the offense of failure to appear or for

16   violation of a court order?

17           THE DEFENDANT:  Yes, I do, Your Honor.

18           THE COURT:  Mr. Thomas, have you advised your

19   client as to what the possible sanctions are should he

20   fail to appear in court when ordered to do so?

21           MR. THOMAS:  I had not, Your Honor, given that

22   he's locked.

23           THE COURT:  He is locked, but --

24           MR. THOMAS:  But I will do so.

25           THE COURT:  Just to be on the safe side we'll

1    do that.

2                  MR. THOMAS:  I will, Your Honor.

3                  THE DEFENDANT:  Thank you.

4                  THE COURT:  Mr. Thomas, if for some reason I'm

5    not available because I'm out of the district, I would

6    expect that Judge Smith would take care of that.

7                  MR. THOMAS:  I will contact your chambers

8    first.

9                  THE COURT:  Okay.

10                 Anything else before we recess?

11                 MS. DAYTON:  No, Your Honor.  Thank you.

12                 MR. THOMAS:  No, Your Honor.  Thank you.

13                 THE DEFENDANT:  No, Your Honor.  Thanks.

14                 THE COURT:  Thank you both.

15                      (Whereupon, a recess followed.)

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           United States vs. Garrett Santillo

4                    3:14CR00194(AWT)

5

6

7           I, Corinna F. Thompson, RPR, Official Court

8   Reporter for the United States District Court for the

9   District of Connecticut, do hereby certify that the

10  foregoing pages, pages 1 – 41, are a true and accurate

11  transcription of my shorthand notes taken in the

12  aforementioned matter on March 13, 2015, to the best of

13  my skill and ability.

14

15

16

17

                    /s/_____

18

                     CORINNA F. THOMPSON, RPR
19                     Official Court Reporter
                      450 Main Street, Room #225
20                    Hartford, Connecticut 06103
                          (860) 547-0580
21

22

23

24

25